# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:15-cr-00025-TWP-VTW ) |
| LAWRENCE DUSEAN ADKINSON (02), | ) ) |
| Defendants. | ) |

## ENTRY ON MOTION TO SUPPRESS

This matter is before the Court on Defendant Lawrence Dusean Adkinson's ("Adkinson") Motion to Suppress (Filing No. 291). Adkinson is charged with Count 1: Conspiracy to Commit Robbery in violation of 18 U.S.C. § 1951(a), Count 2: Conspiracy to Brandish a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(o), Count 3: Robbery in violation of 18 U.S.C. § 1951(a), and Count 4: Brandishing a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c). (Filing No. 48.) Adkinson petitions the Court to suppress any and all evidence obtained through cell phone records and his Facebook account. Neither party requested an evidentiary hearing, nor is one warranted, as neither party has noted any significant disputed factual issues. "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law and **DENIES** the Motion to Suppress.

## I.  FINDINGS OF FACT

On July 27, 2015, a T-Mobile retail store in Clarksville, Indiana was robbed by four black males.  Initially, two of the robbers entered the T-Mobile store posing as customers.  Once the store was clear, the two robbers pulled out handguns and ordered the employees away from the counter and onto the floor inside the office.  After receiving a cell phone call from one of the robbers within the store, two additional robbers entered the T-Mobile store and locked the doors.  The four robbers took approximately one hundred cell phones and placed them into black trash bags.  They also stole T-Mobile's DVR surveillance system, as well as wallets, cash, and cell phones belonging to T-Mobile's employees.  During the robbery, an employee overheard one of the robbers speaking into his cell phone stating they were "ready to go".  The four males then exited the store through the emergency exit located in the rear of the store.

On July 28, 2015, a Verizon Wireless store in Lexington, Kentucky was robbed.  Initially two black males entered the store, and they were later joined by a third black male.  Handguns were brandished and the store employees were led to the rear of the store and ordered to place cell phones and electronic devices into large trash bags.  The robbers attempted to steal the Verizon store's DVR surveillance system; however, surveillance of the three subjects inside the store was captured.  The three males also stole wallets, cash and cell phones belonging to store employees.  Thereafter, from July 2015 through September 2015, several other retail cell phone stores throughout the Midwest area, were robbed in a similar fashion.

Following the robbery of Verizon Wireless, on July 28, 2015, a representative from Verizon provided Ed Schroeder ("Schroeder"), T-Mobile's Regional Loss Prevention Manager for Michigan, Indiana and Kentucky, with surveillance of the Verizon Wireless robbery in Lexington.

T-Mobile employees in Clarksville informed Schroder that the robbers in Lexington looked similar to the men who robbed them in Clarksville.

As part of T-Mobile's Loss Prevention standard procedures, whenever a T-Mobile retail location, T-Mobile Premium Retailer, or a Metro PCS location reports a burglary or robbery, the Loss Prevention Investigations Team will pull 'tower dumps' of all calls that were made on any T-Mobile tower in a small radius and time frame of the location. ([Filing No. 320 at 5](#).) In addition, if information is received from other wireless companies about similar incidences, T-Mobile will also pull tower dumps of those events to aid in their investigation. *Id*. at 5-6. This data is analyzed by the loss prevention team to find any links/connections between each incident. *Id*. at 6. Based on its loss prevention policy, T-Mobile initiated a tower connection data dump for the Clarksville store robbery, as well as a tower connection data dump of the T-Mobile tower servicing the Verizon Wireless in Lexington. From the data dump, T-Mobile learned that a T-Mobile account with the cell phone number (708) 543-7900 was near both tower locations at the time of the robberies.

The mission statement of T-Mobile's Loss Prevention program is to "protect people, property and company profitability by utilizing the Loss Prevention teams' knowledge, expertise, and partnerships." ([Filing No. 320 at 5](#).) The Loss Prevention team investigates incidents such as fraud and theft internally as well as large external cases originating in retail T-Mobile locations. *Id.* The investigative team also has access to subscriber information for T-Mobile accounts. In addition, T-Mobile has a Privacy Policy which describes how they collect, use, disclose, and store personal information of its customers. In regards to its Legal Process and Protection policy, the Privacy Policy explains that "T-Mobile will provide customer information where necessary to comply with the law, such as disclosure of information to a law enforcement agency for the

3

customer's safety or the safety of others, or when T-Mobile is compelled to do so by subpoena or other legal process." (*See* Filing No. 320-7 at 3.) Further, the Privacy Policy explains the following:

> We may disclose Personal Information, and other information about you, or your communications, where we have a good faith belief that access, use, preservation or disclosure of such information is reasonably necessary:
>
> …To protect our rights or interests, property or safety or that of others.

*Id.* at 13.

On August 4, 2015, a conference call occurred between Schroeder, FBI Special Agent Ronald A. Hornback, Jr. ("Agent Hornback"), Detective Nate Walls of the Clarksville Police Department ("Detective Walls"), and T-Mobile's Loss Prevention investigator, Scott Wohl ("Wohl"). Schroder and Wohl informed Agent Hornback and Detective Walls that they had already initiated a tower connection data dump of the T-Mobile tower servicing its store in Clarksville and the Verizon Store in Lexington, and the T-Mobile account with phone number (708) 543-7900 was near both tower locations during the commission of the robberies. (Filing No. 320 at 4, Filing No. 320-2 at 5). Wohl further stated that he had determined the account associated with the number (708) 543-7900 was previously associated with a pre-paid T-Mobile account in the name of Lawrence Adkinson, however on July 7, 2015, Adkinson authorized the number (708) 543-7900 to be switched to a new subscriber, named Darcell Jones. Wohl also indicated that he located pictures of Adkinson via social media and the pictures were consistent with one of the robbers depicted in the Lexington robbery surveillance.

After the conference call, Agent Hornback searched Facebook for the name "Lawrence Adkinson." After conducting several searches on Facebook, Agent Hornback found a public Facebook account, bearing the username "L.a. Booky," which contained a profile photograph of

4

someone similar to one of the robbers captured in the Lexington robbery surveillance. Agent Hornback soon determined that he had located Adkinson's public Facebook account.

Several weeks later, on August 23, 2015, Wohl contacted Agent Hornback regarding the robbery of another T-Mobile store located in St. Louis, Missouri. Wohl explained that the (708) 543-7900 T-Mobile account phone number was near the store at the time of the robbery. Three days later, on August 26, 2015, Wohl again contacted Agent Hornback stating there was another armed robbery of a T-Mobile located in DeKalb, Illinois, which he believed was related to the previous three robberies because the (708) 543-7900 phone number was in the area at the time of the robbery.

Thereafter, Agent Hornback contacted the DeKalb Police Department and learned that three of the robbers—K'Ron Price, Paul Grissom, and Tyren Windell—were apprehended. The DeKalb Police Department recovered Windell's abandoned cell phone and noticed that Windell was in contact with phone number (708) 543-7900 near the time of the robbery. DeKalb police officers searched the abandoned cell phone which revealed that (708) 543-7900 was in the phone's contacts under the name "Bookie." After receiving this information, Agent Hornback again accessed the public Facebook page of "L.a. Booky" and noticed that Price and Windell were listed in "L.a. Booky's" friends list.

On September 3, 2015, the Government applied for and obtained an order, pursuant to 18 U.S.C. § 2703, to retrieve historical phone records for phone number (708) 543-7900, including call records and tower connection data. The historical connection data revealed that the (708) 543-7900 phone number was connected to cell towers near the time of other robberies across Illinois and in Hammond, Indiana. The Government then sought a precision location warrant for phone number (708) 543-7900. While drafting the application for a precision warrant, Wohl informed

Agent Hornback that (708) 543-7900 was no longer active, but the equipment previously associated with phone number (708) 543-7900 was now utilizing the number (708) 262-6900. Based on this information, United States Magistrate Judge Van T. Willis issued a precision location warrant for phone number (708) 262-6900 on September 11, 2015 and T-Mobile was served with the warrant thereafter.

## II. CONCLUSIONS OF LAW

Adkinson moves the Court to suppress any and all evidence obtained without a warrant from his cell phone records and Facebook page. Adkinson contends the issues before the Court are: 1) whether T-Mobile acted as a government agent, 2) whether Adkinson had a reasonable expectation of privacy in his location, and 3) whether the Government was required to obtain a search warrant to search his Facebook page.

### A. Government Agent

Adkinson argues that T-Mobile acted as an agent of the Government when conducting warrantless data dumps. "The Fourth Amendment generally does not apply to searches and seizures by private parties, but it does apply if the private party is acting as a government agent." *United States v. Aldridge*, 642 F.3d 537, 541 (7th Cir. 2011) (citing *United States v. Hall,* 142 F.3d 988, 993 (7th Cir.1998)); *see also United States v. Shahid,* 117 F.3d 322, 325 (7th Cir.1997). The Court considers two factors when determining whether a private party acted as an agent of the government. Here, those factors include: 1) whether the Government knew of and acquiesced in the intrusive conduct, and 2) whether T-Mobile's purpose in conducting the search was to assist law enforcement or to further its own agenda. *See United States v. Hall,* 142 F.3d 988, 993 (7th Cir.1998); *Shahid*, 117 F.3d at 325. The Court also considers whether the Government requested

the data dump or offered T-Mobile a reward. *See Shahid*, 117 F.3d at 325; *Aldridge*, 642 F.3d at 541. The defendant bears the burden of proving agency. *See id*.

Adkinson admits that there is no evidence of a reward from the Government to T-Mobile, but concludes that T-Mobile expected to receive the identification of individuals who robbed several of its stores, as well as the recovery of its stolen merchandise. Adkinson argues the Government clearly knew of, and acquiesced in, T-Mobile's conduct because Agent Hornback was in constant contact with T-Mobile, and T-Mobile provided Agent Hornback with geographic locations immediately after several other robberies. To support his contentions, Adkinson mistakenly asserts that T-Mobile initiated the process of retrieving data from its towers in Clarksville and Lexington only after participating in a conference call with Agent Hornback and Detective Walls.

After reviewing the record, the Court finds that Adkinson's contentions do not establish agency. The Court first notes that there is no evidence that Agent Hornback, Detective Walls, or any other law enforcement officer instructed T-Mobile to conduct warrantless data dumps. The facts before the Court are that all information provided to Agent Hornback by T-Mobile, prior to the issuance of a warrant, was done at T-Mobile's initiation in compliance with its loss prevention policy. "The Fourth Amendment is not triggered when a private party initiates a search and contacts police after evidence is discovered." *Hall*, 142 F.3d at 993. The Court also notes that there is no evidence that T-Mobile expected any benefit, but rather, T-Mobile acted out of its own desire to help law enforcement officers investigate the robberies of its retail locations. "Private parties may, of their own accord, pursue the same objectives they have set for their elected officials without acquiring the legal status of governmental agent." *Shahid,* 117 F.3d at 326.

The Court concludes that T-Mobile did not act as an agent when it initiated data dumps that linked the phone number (708) 543-7900 to the Clarksville robbery, and several other robberies. Accordingly, the Court **denies** Adkinson's request to suppress cell phone records and information resulting from T-Mobile's data dumps.

**B.     Expectation of Privacy**

Adkinson next asserts that he maintained a reasonable expectation of privacy in his location and Facebook account and moves the Court to suppress any information obtained from his cell phone regarding his location, as well as any evidence gathered from his Facebook page. "A defendant objecting to a search bears the burden of proving a legitimate expectation of privacy in the area searched." *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003) (citing *United States v. Ruth,* 65 F.3d 599, 604 (7th Cir.1995)). "A legitimate expectation of privacy exists when the defendant exhibits a subjective expectation of privacy and the expectation is one that society is prepared to recognize as reasonable." *Id.*

  **1.     Location**

Adkinson argues that T-Mobile providing Agent Hornback with cell phone and location data immediately after robberies took place amounts to GPS tracking of a phone, which is not permitted without a warrant. *See United States v. Jones,* 565 U.S. 400, 404-05 (2012) (holding the government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constituted a search within the meaning of the Fourth Amendment); *see also United States v. Karo*, 468 U.S. 705, 717 (1984) (rejecting the government's contention that it should be able to monitor beepers in private residences without a warrant where there is a reasonable belief "that a crime is being or will be committed and that monitoring the beeper wherever it goes is likely to produce evidence of criminal activity"). However, the

contemporaneous tracking of a GPS device utilized in *Jones* has been distinguished from acquiring historical electronic location evidence such as that obtained in this case. *See United States v. Rogers*, 71 F. Supp.3d 745, 749-750 (N.D. Ill. 2014).

The Court concludes that Adkinson's argument is without merit for two reasons. First of all, T-Mobile's Privacy Policy establishes that it may "disclose, without … consent, the approximate location of a wireless device to a governmental entity or law enforcement authority when… [T-Mobile] reasonably believe[s] there is an emergency involving risk of death or serious physical harm," and "to protect [its] rights … interests, property or safety" of others. ([Filing No. 320-7 at 9](), 13.) As an authorized account holder, Adkinson agreed and consented to T-Mobile's Privacy Policy. *See United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007) (noting the Supreme Court has reasoned that an individual claiming a subjective expectation of privacy must exhibit that expectation, and "he or she must not have manifested by his or her conduct a *voluntary consent* to the defendant's allegedly invasive actions") (emphasis added).

In addition, Adkinson has presented no authority to support his contention that there is a Fourth Amendment protected expectation of privacy in historical cell cite connection data. On the other hand, the Government has presented several decisions which held to the contrary. *United States v. Wheeler*, 169 F.Supp.3d 896, 911 (E.D. Wisc. 2016); *United States v. Davis*, 785 F.3d 498, 511 (11th Cir. 2015) (en banc); *see generally*, *United States v. Thousand*, 588 F. App'x 666, 670 (7th Cir. 2014). Accordingly, the Court **denies** Adkinson's motion to suppress the cell phone location evidence.

2. **Facebook**

Adkinson also asserts that the Government violated his Fourth Amendment rights by obtaining information and messages authored by Adkinson from his Facebook page without a

9

warrant. Whether the Fourth Amendment applies to Facebook depends on a user's privacy settings. *United States v. Meregildo*, 883 F.Supp.2d 523, 525-526 (S.D. N.Y. 2012). There is no expectation of privacy in an open Facebook page. *United States v. Devers*, 2012 WL 12540235, *3 (N.D. Okla. 2012). Agent Hornback affirms in his affidavit of September 2015, that through public database searches, a Facebook profile for Adkinson was located under username "L.a. Booky" and then compared to surveillance video captured during the Verizon sort in Lexington. ([Filing No. 320-2](#)). Adkinson argues that while the Government secured consents or warrants for viewing messages from his alleged co-conspirators, his Facebook account was "not open to the world" and that certain information requires a password known only to Adkinson. This may be true. However, the information derived from Adkinson's Facebook page for the purpose of making an identification was publically available; specifically, Adkinson's profile picture and friends list. In addition, Adkinson has no expectation of privacy in messages that he authored and then shared on others' Facebook pages. Based on the facts presented, the Court concludes that Adkinson has not met his burden in establishing a legitimate expectation of privacy. Accordingly, Adkinson's motion to suppress evidence derived from his Facebook page is **denied**.

### III. ORDER

For the reasons stated above, Lawrence Dusean Adkinson's Motion to Suppress ([Filing No. 291](#)) is **DENIED**.

**SO ORDERED.**

Date: 4/7/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Armand I. Judah
LYNCH, COX, GILMAN & GOODMAN, P.S.C.
ajudah@lynchcox.com

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov

James Adrian Earhart
attyearhart@aol.com

Patrick J. Renn
prenn@600westmain.com

Richard Mark Inman
ATTORNEY AT LAW
markinman13@aol.com

Jonathan M. Hodge
BARBER BANASZYNSKI & HIATT, PSC
hodge@bbalaw.com

Brian K. Darling
BRIAN K. DARLING
confederateyankeester@gmail.com

David S. Mejia
DAVID MEJIA LAW OFFICE
david@dmejialaw.com

William H. Dazey, Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org

Larry D. Simon
SIMON LAW OFFICE
larrysimonlawoffice@gmail.com

Jerry McGraw
THE MCGRAW LAW OFFICE
jerry@jmcgrawlaw.com