# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cr-00025-TWP-VTW |
| | ) | |
| JEFFREY ANTIONE KEMP (01), | ) | |
| LAWRENCE DUSEAN ADKINSON (02), | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER DENYING DEFENDANTS' MOTION IN *LIMINE*

This matter is before the Court on a Motion in *Limine* to exclude any expert evidence concerning cellphone towers, dumping, pinging, or triangulation, filed by Defendants Lawrence Dusean Adkinson ("Adkinson") and Jeffrey Antione Kemp (collectively, "Defendants"). ([Filing No. 290](#).)[1] Defendants requested a hearing to determine the admissibility of any cellphone dumping, triangulation and pinging evidence pursuant to Rule 703 of the Federal Rules of Evidence and *Daubert vs. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). On Wednesday, June 14, 2017, the Court held a *Daubert* hearing on the issues raised in the motion *in limine*, and, for the following reasons, the Defendants' Motion *in Limine* is **denied.**

### I. FINDINGS OF FACT

On July 27, 2015, a T-Mobile retail store in Clarksville, Indiana was robbed by four Black males. Initially, two of the robbers entered the T-Mobile store posing as customers. Once the store was clear, the two robbers pulled out handguns and ordered the employees away from the counter and onto the floor inside the office. After receiving a cellphone call from one of the

---

[1] On February 28, 3017 Defendant Jeffrey Antione Kemp filed a motion to join in Adkinson's motion *in limine* ([Filing No. 322](#)) and that motion was granted. See [Filing No. 325](#).

robbers within the store, two additional robbers entered the T-Mobile store and locked the doors. During the robbery, an employee overheard one of the robbers speaking into his cellphone stating they were "ready to go". The four males then exited the store through the emergency exit located in the rear of the store.

On July 28, 2015, a Verizon Wireless store in Lexington, Kentucky was robbed under similar circumstances as the Clarksville, Indiana T-Mobile store. Thereafter, from July 2015 through September 2015, several other retail cellphone stores throughout the Midwest area, were robbed in a similar fashion.

As part of T-Mobile's Loss Prevention standard procedures, whenever a T-Mobile retail location, T-Mobile Premium Retailer, or a Metro PCS location reports a burglary or robbery, the Loss Prevention Investigations Team will pull 'tower dumps' of all calls that were made on any T-Mobile tower in a small radius and time frame of the location. ([Filing No. 320 at 5](#).) In addition, if information is received from other wireless companies about similar incidences, T-Mobile will also pull tower dumps of those events to aid in their investigation. *Id*. at 5-6. This data is analyzed by the loss prevention team to find any links/connections between each incident. *Id*. at 6. Based on its loss prevention policy, T-Mobile initiated a tower connection data dump for the Clarksville store robbery, as well as a tower connection data dump of the T-Mobile tower servicing the Verizon Wireless in Lexington. From the data dump, T-Mobile learned that a T-Mobile account with the cellphone number (708) 543-7900 was near both tower locations at the time of the robberies.

FBI Special Agent Ronald A. Hornback, Jr. ("Agent Hornback"), Detective Nate Walls of the Clarksville Police Department ("Detective Walls"), and T-Mobile's Loss Prevention investigator, Scott Wohl ("Wohl") conducted a conference call in which the loss prevention

investigators informed Agent Hornback and Detective Walls that they had initiated a tower connection data dump of the T-Mobile tower servicing its store in Clarksville and the Verizon Store in Lexington, and the T-Mobile account with phone number (708) 543-7900 was near both tower locations during the commission of the robberies. ([Filing No. 320 at 4](), [Filing No. 320-2 at 5]()). Wohl further stated that he determined the account associated with the number (708) 543-7900 was previously associated with a pre-paid T-Mobile account in the name of Lawrence Adkinson, however on July 7, 2015, Adkinson authorized the number (708) 543-7900 to be switched to a new subscriber, named Darcell Jones. Wohl also indicated that he located pictures of Adkinson via social media and the pictures were consistent with one of the robbers depicted in the Lexington robbery surveillance video.

Several weeks later, on August 23, 2015, Wohl contacted Agent Hornback regarding the robbery of another T-Mobile store located in St. Louis, Missouri. Wohl explained that the (708) 543-7900 T-Mobile account cellphone number was near the store at the time of the robbery. Three days later, on August 26, 2015, Wohl again contacted Agent Hornback stating there was another armed robbery of a T-Mobile located in DeKalb, Illinois, which he believed was related to the previous three robberies because the (708) 543-7900 cellphone number was in the area at the time of the robbery.

On September 3, 2015, the Government applied for and obtained an order, pursuant to 18 U.S.C. § 2703, to retrieve historical records for cellphone number (708) 543-7900, including call records and tower connection data. The historical connection data revealed that the (708) 543-7900 cellphone number was connected to cell towers near the time of other robberies across Illinois and in Hammond, Indiana. The Government then sought a precision location warrant for cellphone number (708) 543-7900. While drafting the application for a precision warrant, Wohl informed

Agent Hornback that (708) 543-7900 was no longer active, but the equipment previously associated with cellphone number (708) 543-7900 was now utilizing the number (708) 262-6900. Based on this information, United States Magistrate Judge Van T. Willis issued a precision location warrant for cellphone number (708) 262-6900 on September 11, 2015 and T-Mobile was served with the warrant.

Thereafter, Defendants were charged with Count 1: Conspiracy to Commit Robbery in violation of 18 U.S.C. § 1951(a), Count 2: Conspiracy to Brandish a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(o), Count 3: Robbery in violation of 18 U.S.C. § 1951(a), and Count 4: Brandishing a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c). ([Filing No. 48](#).) This matter is set for trial by jury on August 7, 2017.

Adkinson filed a motion *in limine* challenging the admissibility of evidence concerning cellphone towers, dumping, pinging, or triangulation evidence and the testimony of any expert witness on this subject matter. In response, the Government asserts that admission of historical cell site connection data concerning cellphone tower, dumping, pinging and triangulation evidence is wholly supported by *Daubert* and case law within the Seventh Circuit. ([Filing No. 332](#).) Thereafter, the Court scheduled a *Daubert* hearing. On April 7, 2017, the Government filed a notice of expert disclosure, ([Filing No. 368](#)), which provided disclosure of its cellular connection data expert witness and his proposed testimony. The *Daubert* hearing was held on June 14, 2017.

## II.  LEGAL STANDARD

### A.  Motion in *Limine*

The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings

4

must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id*. at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id*. at 1401

**B.      Expert Witnesses testimony and *Daubert***

Federal Rule of Evidence 702 governs testimony of expert witnesses. An expert may testify regarding the ultimate issue in a case. Fed. R. Evid. 704(a). Furthermore, an expert can base her opinion on inadmissible evidence. Fed. R. Evid. 703. However, "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

"Under the *Daubert* gatekeeping requirement, the district court has a duty to ensure that expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 488–89 (7th Cir. 2007) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case." *Id.* at 489. The Court is given "latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citing *Jenkins*, 487 F.3d at 489).

"In determining reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community." *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993)). "The court should also consider the proposed expert's full range of

experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id.*

> Since the gatekeeping inquiry must be tied to the facts of the particular case, . . . a trial court may - but is not required to - consider "one or more of the more specific factors that *Daubert* mentioned when doing so will help determine the testimony's reliability." But, the [Supreme] Court stressed, those factors, which were meant "to be helpful, not definitive," "neither necessarily nor exclusively apply to all experts or in every case." Their applicability will depend on "'the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" The procedure employed will depend largely on the "particular circumstances of the particular case at issue."

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 934 (N.D. Ill. 2006) (quoting *Kumho Tire*, 526 U.S. at 142, 150, 152).

Additionally, the district court must determine whether the proposed expert testimony will assist the trier of fact in determining a fact in issue or understanding the evidence. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton*, 593 F.3d at 616.

> Vigorous cross examination, presentation of contrary evidence and careful jury instructions . . . are the traditional and appropriate means of attacking shaky but admissible evidence. The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.

*Richman*, 415 F. Supp. 2d at 933 (citations and quotation marks omitted).

### III. **DISCUSSION**

Defendants ask the Court to exclude any evidence concerning cellphone towers, dumping, pinging, or triangulation because such evidence requires specialized knowledge. The Government offers Task Force Officer Robert Moledor ("Officer Moledor") as an expert in "Radio Frequency Theory" and "cell technology". Officer Moledor provided extensive testimony concerning his

professional qualifications as member of the FBI's Cellular Analysis Survey Team ("CAST") and about how cellphones work, how towers work, the location of towers, how towers are orientated, what a connection means, and what a connection does not mean. In addition, he testified concerning his training to determine a rough estimate, based upon connection information, when a particular handset is within a certain tower's radio frequency footprint at the time of connection. Officer Moledor is also trained on the operation of special equipment that monitors and maps the relative signal strengths of a tower.

Based on his experience, training, and practice concerning cellphone towers, dumping, pinging, and triangulation, Officer Moledor mapped the location of the Defendants to certain cellphone towers at the time of each robbery charged in this case, using historical data provided by the Defendants' cellphone carriers.

The Court notes that during the hearing Defendants did not challenge the training and experience received by Officer Moledor regarding cellphone towers, dumping, pinging, or triangulation. Defendants specifically stated: "I realize the training he's received, I'm not disputing that." Defendants, however, took issue with the reliability of the mapping technology— specifically the software programs CAST Viz and ESPA by Gladiator—used by Officer Moledor to map the historical data of Defendants' cellphones.

Despite Defendants' concerns, the Court notes that the Seventh Circuit previously decided that such methods are reliable in cases where an expert makes clear that the mapping technology lacks the ability to pinpoint a defendant's exact location. *See United States v. Hill*, 818 F.3d 289, 298 (7th Cir. 2016) (noting "[h]istorical cell-site analysis can show with *sufficient reliability* that a phone was in a general area…and the science is well understood…A mathematical error rate has not been calculated, but the technique has been subjected to publication and peer criticism, if not

7

peer review"). The Court's gatekeeper function under *Daubert* is merely to determine the admissibility of an expert's testimony by assessing its relevance to the issues in the case and the reliability of the opinions asserted. The court in *Daubert* emphasized that admissibility should rest only on an examination of the expert's "principles and methodology" and "not on the conclusions that they generate." *Daubert* at 595. Accordingly, because Officer Moledor emphasized that the mapping technology used to analyze the Defendants' historical cellphone data provides only a radio frequency footprint, but "does not give the exact location of the phone," the Court finds Officer Moledor's methods reliable and the proffered evidence admissible under *Daubert* standards.

Defendants also raised an oral objection to the cellphone tower data evidence, under Federal Rule of Evidence 403. As stated earlier, the Defendants challenge the reliability of the historical cellphone data and ask the Court to exclude any reference to cellphone towers, dumping, pinging, and triangulation, arguing that even if the Court finds the evidence admissible under *Daubert*, it still should be excluded because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. The Court disagrees. The Court finds that the proximate location of Defendants' cellphones at the time of each robbery is highly probative as to the charges pending against each Defendant. In addition, without Officer Moledor's testimony, there is a danger of confusing and misleading the jury because the jury would receive only Defendants' historical cellphone data and GPS coordinates—devoid of any context or understanding for what the data means. The Defendants' concerns regarding the quality and precision of the evidence can be resolved through cross examination of the witness. Accordingly, the Court finds that the probative value in assisting the trier of fact outweighs any unfair prejudice to the Defendants. Defendants' Rule 403 motion is **denied**.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion *in Limine* (Filing No. 290) to exclude Officer Moledor from testifying at trial concerning cellphone towers, dumping, pinging, or triangulation is **DENIED**. The Court also finds that the probative value of Officer Moledor's testimony outweighs any unfair prejudice to Defendants.

**SO ORDERED.**

Date: 6/23/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard Mark Inman
ATTORNEY AT LAW
markinman13@aol.com

Armand I. Judah
LYNCH, COX, GILMAN & GOODMAN, P.S.C.
ajudah@lynchcox.com

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov