**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

LAWRENCE DUSEAN ADKINSON,     )
    )
    Petitioner,     )
    )
    v.     )     Case No. 4:20-cv-00030-TWP-DML
    )
UNITED STATES OF AMERICA,     )
    )
    Respondent.     )

**ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, filed by Petitioner Lawrence Dusean Adkinson ("Adkinson") (Dkt. 1). For the reasons discussed in this Order, the Motion must be **denied** and the action **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

**I. LEGAL STANDARD**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which

results in a complete miscarriage of justice" *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir.

2013).

## II.   FACTUAL BACKGROUND

Adkinson was charged, by Superseding Indictment, with:  Conspiracy to Commit Hobbs

Act Robbery, in violation of Title 18 U.S.C. § 1951(a) (Count 1); Conspiracy to Brandish a Firearm

in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(o), (Count 2); Hobbs Act

Robbery, in violation of 18 U.S.C. § 1951(a), (Count 3), and Brandishing a Firearm in Furtherance

of a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count 4). *United States v. Walker*, No.

4:15-cr-00025-TWP-VTW-2 (hereinafter "Crim. Dkt."), (Crim. Dkt. 425). Specifically, Counts 3

and 4 alleged that Adkinson and his co-defendants brandished a firearm in furtherance of a robbery

they committed in Clarksville, Indiana on July 27, 2015. *Id.*

Attorney Khalid Kahloon was appointed on February 8, 2016, to represent Adkinson in his

criminal case.  (Crim. Dkts. 110, 113.)  On March 20, 2016, Kahloon filed a motion for psychiatric

examination.  (Crim. Dkt. 158.)  The Court granted the request for a psychiatric examination and

Adkinson was evaluated from April 27 to June 10, 2016 by Dr. Heather H. Ross ("Dr. Ross"),  at

the Federal Correctional Institution in Butner, North Carolina.  (Dkt. 186-1 at 1.)  A  competency

hearing was held pursuant to 18 U.S.C. 4241(a).  (Crim. Dkt. 221.)  At the hearing, the Court heard

testimony from Special Agent Hornback that Adkinson participated in telephone conversations

with his father concerning the mental competency evaluation, during which Adkinson's father

advised him that he should "act as if he was slow." *Id*., Crim. Dkt. 590 at 20-21.  The Court heard

testimony from Adkinson which demonstrated a minimal understanding of the roles of typical

court participants and with instruction from the court, was able to articulate some understanding

of the legal proceedings against him and appeared capable of assisting counsel in his defense. *Id*.

At the hearing, Kahloon stated he had no objection to the report of Dr. Ross.  (Crim. Dkt. 590 at

4.)  The Court noted Dr. Ross opinion:

> Although Mr. Adkinson suffers from substance abuse and possible mental health
> diagnosis, his current functioning abilities are intact in a manner that he may utilize
> them to aid in his own defense and understand the facts of his case rationally.
> Whether he may choose to do so is difficult to determine. The information available
> to the undersigned evaluator, taken as a whole, is suggestive of current malingered
> incompetence. …[I]t is my opinion, despite his reported difficulties and feigned lack
> of knowledge, Mr. Adkinson is competent to the extent he is able to understand the
> nature and consequences of the proceedings against him and assist properly in his
> defense.

(Crim. Dkt. 221 at 2.) Based upon the evidence and testimony presented at the hearing, in

accordance with 18 U.S.C. § 4241(d), the Court concluded that Adkinson was mentally competent

for trial or for pleading guilty. (Crim. Dkt. 221 at 3.)

A Petition to Enter a Plea of Guilty and Plea Agreement was signed by Adkinson and filed

on September 7, 2016, prior to this Court's determination of competency.  *Id.* (*citing* Crim. Dkt.

208).  In the Plea Agreement, Adkinson agreed to plead guilty as charged and stipulated to the

facts supporting his pleas of guilty.  (Crim. Dkt. 208  at 1-2, 7-8, 10-11.)  In exchange, the

Government agreed to recommend a sentence no higher than 240 months' imprisonment and

agreed to file a motion pursuant to the United States Sentencing Guidelines § 3E1.1(b) to reduce

Adkinson's offense level by one level for his acceptance of responsibility.  *Id.* at 5, 10.  Following

the determination of competency, this Court ordered defense counsel to meet with Adkinson to

ensure that he was capable of understanding his constitutional rights, understood the terms of the

Plea Agreement and to confer about whether he still intended to accept the government's offer and

proceed in pleading guilty.  (Crim. Dkt. 221 at 3.)

Kahloon then re-negotiated the plea agreement to gain a concession from the Government permitting Adkinson to argue, rather than concede, whether a sentencing enhancement applied. (Crim. Dkt. 227.)  Kahloon then took the more favorable plea offer and met with Adkinson about the Government's offer as the Court instructed.  (Crim. Dkts. 239 at 2; 251 at 1.) But Adkinson refused to sign the agreement.  *Id.*  The Government filed a notice on November 29, 2016 at dkt. 255 indicating plea negotiations had broken down, the Government had withdrawn any and all plea offers, and asked the Court to set a trial date. Thereafter, Kahloon moved to withdraw his appearance and Armand Judah was appointed on December 1, 2016.  (Crim. Dkts. 260, 261.)

Kahloon provided Judah with his file and the discovery materials.  (Dkt. 8-1 at 2.)  Judah, after reviewing the evidence, advised Adkinson to sign the plea agreement that Kahloon had negotiated, telling him that it was "a very good deal".  *Id.* at 3.  Judah "advised Mr. Adkinson of the strength of the government's case and the high probability he would be convicted by a jury." *Id*.  Adkinson, however, insisted on going to trial.  *Id.*

Judah met with Adkinson in person on January 20, 2017 and advised that he accept the Government's offer.  (Dkt. 8-1 at 5-6.)  On January 23, 2017, Judah sent a letter in which he reiterated his advice regarding the advisability of proceeding to trial and again advised that Adkinson accept the plea offer:

> It is my legal opinion that the government has an excellent case and that…there is very little hope of preventing a jury from finding you guilty.…
> ….
> [A]t this point, as I have advised you on numerous occasions, it is in your best interest to plead guilty, which will result in a lower sentence than you would receive at trial.

*Id.* at 6.   Again, on May 30, 2017, Judah attempted to convince Adkinson to accept the Government's offer:  "I urge you to strongly consider this and take a very hard look at whether or

not you still wish to go to trial. I assure you that I am diligently preparing your case for trial but, as I have previously advised you, we are fighting an uphill battle." (Dkt. 8-1 at 7.)

Against advice from two competent attorneys, Adkinson rejected the Government's plea offers and proceeded to trial. At trial, the jury found Adkinson and his co-defendant guilty as charged. (Crim. Dkt. 576.)  On November 15, 2017, this Court sentenced Adkinson to a total of 346 months' imprisonment.  (Crim. Dkt. 671.)

Adkinson appealed his conviction and sentence arguing that: 1) the Court erred in denying his last-minute motion for change of venue; and 2) the Court erred in denying the motion to suppress cell site location evidence. *United States v. Adkinson*, 916 F.3d 605 (7th Cir. 2019).  The Seventh Circuit affirmed.  *Id.*  Now before the Court is Adkinson's November 21, 2019 § 2255 Motion challenging his conviction (Dkts. 1 and 2).

### III.  DISCUSSION

Adkinson asserts that: 1) counsel was ineffective for not advising him to accept the Government's offer, and 2) his § 924(c) conviction was invalid because it was based on a conspiracy to commit Hobbs Act Robbery.  *Id.*  The Government opposes Adkinson's Motion and argues his grounds for relief are without merit because his attorneys advised him to accept the Government's plea offer and his conviction is based on a substantive Hobbs Act Robbery, not conspiracy.  The Court will address each claim in turn.

### A.    Ineffective Assistance of Counsel

The Sixth Amendment right to counsel applies during plea negotiations.  *Bridges v. United States*, No. 20-1623, -- F.3d --, 2021 WL 1016433, at *6 (7th Cir. Mar. 17, 2021); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  Counsel is deemed ineffective if "counsel's performance was deficient" and "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668,

687 (1984). The performance issue is whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

Adkinson's § 2255 motion asserts that his counsel was ineffective because counsel failed to advise him as to whether he should accept or reject a particular plea offer made by the Government. (Dkt. 1 at 4.) Adkinson states in his memorandum in support of his motion that he was offered a plea deal, but that he rejected that plea offer. (Dkt. 2 at 2, 4.) Adkinson states that his attorney did not discuss whether he should accept or reject this plea offer in a way that he could understand. *Id.* at 4. He states generally that if he had the "benefit of competent legal advice, he would have accepted the government's plea offer." (Dkt. 2 at 5.) This argument, however, is not supported by any evidence in the § 2255 briefing and is directly contradicted by the record.

First, the record reflects that Adkinson was advised to plead guilty by two separate attorneys. It was Adkinson, and not his attorneys, who believed the best course was to proceed to trial. Kahloon negotiated a plea agreement for Adkinson. However, Adkinson refused to accept counsel's advice and did not even want to review the agreement with Kahloon. (Crim. Dkts. 239, 251.)

Nor did Adkinson accept the competent advice of his second attorney. Judah "advised Mr. Adkinson of the strength of the government's case and the high probability he would be convicted by a jury." (Dkt. 8-1 at 3.) Adkinson spoke with Judah in person at the Grayson County Detention Center. Judah "told him in person and in writing that he should accept" the Government's offer. *Id.* at 3. He advised Adkinson of the consequences to his potential sentence if he proceeded to trial. *Id.* The letters sent to Adkinson from Judah advising him to plead guilty are clear and in plain language. (Dkt. 8-1 at 5-7.) Adkinson does not suggest that he misunderstood them. Nor has he identified any particular fact or legal issue that would have changed his decision. In other

words, there is no evidence to support Adkinson's vague conclusion of ineffective assistance of counsel.  *See United States v. Smith*, 989 F.3d 575, 583 (7th Cir. 2021) (evidentiary hearing not required "if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific.") (quoting *Gaylord v. United States*, 829 F.3d 500, 506–07 (7th Cir. 2016)).

In summary, Adkinson received the competent advice of two attorneys to plead guilty.  He proceeded to trial against their advice.  His claim that his attorneys should have advised him to plead guilty is squarely contradicted by the record.  Under these circumstances, Adkinson cannot show that his counsel's representation "fell below an objective standard of reasonableness." *Lafler*, 566 U.S. at 163 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).  Nor has he shown that he would have accepted a plea agreement upon competent advice.  *Lafler,* 566 U.S. at 163.  His rejection of two different attorneys' advice to plead guilty unequivocally shows that he would not have accepted a plea agreement.

**B.**     **Section 924(c) Conviction**

Adkinson also challenges his § 924(c) conviction asserting that in light of the United States Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), his conviction for conspiracy to commit Hobbs Act Robbery is not a crime of violence.  (Dkt. 2 at 6.)  In response, the Government argues that Adkinson has procedurally defaulted this claim and that the § 924(c) conviction is in fact invalid.

"Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Hale v. United States*, 710 F.3d 711, 713–14 (7th Cir. 2013); *Massaro v. United States,* 538 U.S. 500, 504 (2003). A § 2255 petition is not a

substitute for direct appeal.  *United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).

However, constitutional claims may be raised for the first time in a collateral attack if the petitioner can show cause for the procedural default and prejudice from the failure to appeal. *Massaro,* 538 U.S. at 504.  In order to show cause for a procedural default, the petitioner must demonstrate that some objective factor external to the record impeded his efforts to bring a claim on direct appeal.  *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).  If a petitioner is unable to demonstrate both cause and prejudice, he may be able to obtain habeas review only if he can persuade the court that the dismissal of his petition would result in a fundamental miscarriage of justice – that is, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

The Government correctly points out that Adkinson makes no claim of cause and prejudice, nor could he.  In 2016, the Seventh Circuit "h[e]ld that the residual clause in § 924(c)(3)(B) is also unconstitutionally vague."  *United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016). Adkinson's trial and sentencing was held in 2017, well after *Cardena* was decided. *Cardena* equipped Adkinson with the necessary law to raise this claim at the time of his trial and sentencing. He has not provided any explanation for not doing so.  *Delatorre*, 847 F.3d at 844.

In addition, Adkinson's § 924(c) conviction remains valid.  This statute prohibits the use of a firearm in furtherance of a crime of violence or drug trafficking crime.  18 U.S.C. § 924(c). The Superseding Indictment specified that Adkinson brandished his firearm in furtherance of a crime of violence, specifically robbery. (Crim. Dkt. 425.)

Section 924(c)(3) defines "crime of violence" to include any felony that either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property

of another," often referred to as the elements clause or force clause, or "(B) by its nature, involves a substantial risk that physical force against the person or property of another may be used," referred to as the residual clause.  18 U.S.C. § 924(c)(3).  In *Davis*, 139 S. Ct. at 2336, the Supreme Court held that the residual clause, § 924(c)(3)(B), is "unconstitutionally vague."

Adkinson argues that his conviction under § 924(c) should be vacated because the crime of violence underlying his conviction was based on the residual clause.  To make this argument, he contends that the crime of violence he committed was conspiracy to commit Hobbs Act Robbery.  (*See* Dkt. 2 at 6.)

Adkinson's argument fails because it is based on a false premise.  The crime of violence underlying his § 924(c) charge was not *conspiracy* to commit Hobbs Act Robbery—it was Hobbs Act Robbery.  Although Count One charged Adkinson with conspiracy to commit Hobbs Act Robbery, the Superseding Indictment identified "robbery affecting commerce in violation [of] Title 18, United States Code, Section 1951" as the crime of violence underlying his § 924(c) charge.  (*See* Crim. Dkt. 425 at 6.)

This holding is guided by the Seventh Circuit's conclusion when addressing a similar argument raised by a co-defendant on direct appeal.  The Seventh Circuit explained that the indictment and plea agreement "show that robbery, not conspiracy to commit it, was the predicate offense.  And robbery under 18 U.S.C. § 1951(a) (the Hobbs Act) is a crime of violence under 18 U.S.C. § 924(c)(3)(A)."  *United States v. Grissom*, 760 F. App'x 448, 454 (7th Cir. 2019).

In addition, it is well settled that Hobbs Act Robbery is a crime of violence under the elements clause of § 924(c)(3).  *See United States v. Fisher*, 943 F.3d 809, 815 (7th Cir. 2019) (collecting cases); *see also United States v. Fox*, 878 F.3d 574, 579 (7th Cir. 2017); *United States*

*v. Rivera*, 847 F.3d 847, 848 (7th Cir. 2017).  Thus, the invalidation of the residual clause in *Davis* does not impact Adkinson's conviction under § 924(c) based on Hobbs Act Robbery, § 1951(a).

The crime of violence underlying Adkinson's § 924(c) conviction was Hobbs Act Robbery, not conspiracy to commit Hobbs Act Robbery, and Hobbs Act Robbery is a crime of violence. Therefore, Adkinson's conviction is sound notwithstanding the Supreme Court's decision in *Davis*. Adkinson is not entitled to habeas relief on this basis.

## IV.   CONCLUSION

For the reasons explained in this Order, Adkinson is not entitled to relief on his § 2255 motion.  Accordingly, his Motion for relief pursuant to § 2255, (Dkt. [1]), is **DENIED** and this action is **dismissed with prejudice**.  Judgment consistent with this Order shall now issue and the **Clerk shall docket a copy of this Order in 4:15-cr-00025-TWP-VTW-2**.  The Motion to Vacate, (Crim. Dkt. [814]), shall also be **terminated** in the underlying criminal action.

## V.   DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition.  Rather, he must first request a certificate of appealability.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Adkinson has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

SO ORDERED.

10

Date:  4/14/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Lawrence Dusean Adkinson, #16452-029
PEKIN FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. Box 5000
Pekin, Illinois  61555

Amanda Kester
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
amanda.kester@usdoj.gov

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brad.shepard@usdoj.gov